UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FIRST NATIONAL BANK
OF ONEIDA, N. A.

    Plaintiff,

v.                                            Case No. 8:16-cv-51-T-AAS

DONALD H. BRANDT,

    Defendant.
_____/

## ORDER

First National Bank of Oneida, N. A. (First National) moves for the entry of summary judgment in its favor against Donald H. Brandt (Brandt) for $1,227,712.95, together with an award of attorney's fees and costs. (Doc. 106). Brandt opposes the motion. (Docs. 114, 115). First National replied to Brandt's response. (Doc. 116).

I.    BACKGROUND

Between 2007 and 2009, First National, as lender, and Brandt, as borrower, entered several loans secured by real property owned by Brandt. (Doc. 80). Seven loans are at issue in this action—loan nos. 0323, 0331, 3745, 1054, 5781, 6387, and 8033. (*Id.* at p. 3).

On July 27, 2009, Brandt filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, Case No. 8:09-bk-16166-CPM.[1] Because Brandt failed to make payments on the loans and failed to pay real

---

[1] Docket entries in the bankruptcy case are cited as (Bk-Doc. [document number]).

1

estate taxes on the properties securing his debts, the bankruptcy court granted First National's request for stay relief to exercise its rights on the properties. (Bk-Docs. 534, 547, 601).

In 2013 and 2014, First National sold the properties securing the loans and mortgaged by Brandt at auction sales. (Doc. 105, ¶¶ 4, 10, 19, 23, 29, 35; Exs. 1, 2, 4). After applying the profits from the sale, the loans remained deficient and on November 20, 2015, the bankruptcy court granted First National's request for stay relief to pursue its deficiency claims against Brandt personally. (Bk-Doc. 694). On December 19, 2017, Brandt's Chapter 11 case was dismissed without discharge of his pre-petition debts. (Bk-Doc. 866).

On November 13, 2019, First National filed its third amended complaint alleging that, after applying the proceeds of sale received from the auction sales, Brandt remains indebted for $1,117,734.53, with interest accruing on the unpaid principle balances. (Doc. 80, p. 4). In his response to First National's third amended complaint, Brandt raises three affirmative defenses. (Doc. 83). First, Brandt alleges that the fair market values of the properties at the time of sale exceeded the auction sale price and the debt owed. (*Id.* at p. 4). Second, Brandt asserts that First National violated the bankruptcy court's order confirming Brandt's plan. (*Id.*). This defense fails because the bankruptcy court dismissed of Brandt's Chapter 11 case without discharge of any of his pre-petition debts. (Bk-Doc. 866). Third, Brandt contends First National may have had mortgage insurance or other risk offsets that would eliminate or reduce any losses or deficiency. (Doc. 83, p. 4). According to Allyn M.

2

Lay, Jr., Senior Vice President of First National, First National received no funds from mortgage insurers or the like for the properties involved here. (Doc. 105-1, p. 6). Thus, Brandt's only remaining defense challenges the value of the liquidated properties when they were sold.

## II. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, an issue of fact is material if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden, the court must review the record and draw all reasonable inferences from the record in a light most favorable to the non-moving party. *See Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999). Once the court determines the moving party has met this burden, the burden shifts to the non-moving party to present specific facts showing a genuine issue of fact exists that precludes summary judgment. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must produce substantial evidence to defeat a motion for summary judgment. *Garczynski*

3

v. *Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Can.*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).

B.   Analysis

First National and Brandt do not dispute the loan amounts or terms. (Docs. 114, 115). Instead, Brandt disputes the balances due based on his affirmative defense that the collateral properties were sold for materially less than fair market value. (*Id.*).

Tennessee Code Annotated § 35-5-118[2] provides:

> (a) In an action brought by a creditor to recover a balance still owing on an indebtedness after a trustee's or foreclosure sale of real property secured by a deed of trust or mortgage, the creditor shall be entitled to a deficiency judgment in an amount sufficient to satisfy fully the indebtedness.
>
> (b) In all such actions, absent a showing of fraud, collusion, misconduct, or irregularity in the sale process, the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale. *The creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale.*
>
> (c) *To overcome the presumption set forth in subsection (b), the debtor must prove by a preponderance of the evidence that the property sold for an amount materially less than*

---

[2] Tennessee law applies under the terms of the loans. (*See* Doc. 80-1).

4

> *the fair market value of property at the time of the foreclosure sale.* If the debtor overcomes the presumption, the deficiency shall be the total amount of the indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale as determined by the court.

Tenn. Code Ann. § 35-5-118 (emphasis added).

To rebut the presumption that the sale of the property was equal to fair market value, Brandt argues the proof of claim forms submitted in the beginning of the bankruptcy action support a higher valuation of the property. (Doc. 114, pp. 5-8). Thus, Brandt argues, First National is judicially estopped from claiming a reduced value of the property. (*Id.*). Brandt contends these proof of claim forms, his affidavit opining the property values in Campbell County increased, and the "Assessment Summaries" showing assessment values for various categories of properties provide sufficient evidence that the collateral property was sold for an amount materially less than fair market value. (*Id.* at p. 8).

As an initial matter, Brandt's failure to plead judicial estoppel waived this defense. *See Am. Nat. Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1537 (11th Cir. 1983) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel . . . ."). This waiver of the defense, however, does not forego Brandt's ability to rely on the proof of claim forms to support a higher fair market value. That said, the proof of claim forms were filed in 2009, and the properties were sold in 2013 and 2014. Thus, these proof of claim forms offer little insight into fair market value at the time of the sale. *See In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1020 n.4 (11th Cir. 1984)

5

("Value [of collateral] is determined as of the filing date."); *Lost Mountain Dev. Co. v. King*, No. M2004-02663-COA-R3-CV, 2006 WL 3740791, at *8 (Tenn. Ct. App. Dec. 19, 2006) ("[T]he issue in deficiency actions is the fair market value of the property at the time it was sold."); *see also Capital Bank v. Brock*, No. E2013-01140-COA-R3-CV, 2014 WL 2993844, at *6 (Tenn. Ct. App. June 30, 2014) ("[T]he 2009 appraisal and purchase price that Debtors paid in 2009, nearly five years before the foreclosure, are not competent evidence of the fair market value of the property at the time of the foreclosure.").

The assessment summaries list purported values for various categories of unspecified real property in Campbell County, Tennessee in 2009, 2010, 2013, and 2014. (Doc. 115-8). Without a records custodian or a witness to authenticate these documents, the assessment summaries contain inadmissible hearsay. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (quotation and footnote omitted). Inadmissibility aside, the assessment summaries offer little probative value. They lack specific locations or other relevant information to support the valuation of the subject properties on their respective sales dates. (*See* Docs. 115-8). Indeed, there is no description of the assessed properties and two of the three assessment summaries are undated. (*Id.*).

Brandt's opinion that the property values in Campbell County, Tennessee "generally, increased" between 2009 and 2014 cannot defeat summary judgment. (Doc. 115-7). An owner's valuation testimony is not competent evidence of value if it

6

is based on pure speculation. *Airline Const., Inc. v. Barr*, 807 S.W.2d 247, 256 (Tenn. Ct. App. 1990) ("Although an 'owner' of real property is deemed to have special knowledge about his property to offer an opinion as to its value, the owner's opinion will be given little weight when founded upon pure speculation. There must be some evidence, apart from mere ownership, that this 'value' is a product of reasoned analysis.").

Brandt's expert, Robert Fletcher, did not appraise the properties and stated, "[t]he bottom line is I am not sure reappraising the properties, effective 2013, would be worth the cost relative to the values that I believe would most probably be very close to those developed by" First National's appraiser. (Doc. 105-10, p. 4). The values determined by First National's appraiser totaled $584,500.00. Specifically,

(i) 216 East Beech St. appraised at $124,000;

(i) 306 South Indiana appraised at $20,000;

(iii) Powder Mill Lots 1, 6, 7, 11, 20, 21, and 22 appraised at $262,500;

(iv) 721 Cherry St. appraised at $15,000;

(v) 201 West Central appraised at $83,000; and

(vi) Norris Lake Condo appraised at $80,000.

(Doc. 105-5).

First National received $497,000 from the sales of the properties. Specifically,

(i) Loan no. 0335 (previously 0323), secured by 216 East Beech St., sold for $85,000;

(ii) Loan no. 0331, secured by 306 South Indiana, sold for $16,000;

7

(iii) Loans nos. 1054 and 5781, secured by Lots in Powder Mill, sold for $243,000;

(iv) Loan no. 3745, secured by 721 Cherry St., sold for $18,000;

(v) Loan no. 6367, secured by 201 West Central, sold for $80,000; and

(iv) Loan no. 8033, secured by Norris Lake Condo, sold for $55,000.

(Doc. 105, ¶¶ 4, 10, 19, 23, 29, 35).

The amount received from the property sales was $497,000. The fair market value set forth by the appraisal (and agreed to by Brandt's expert) was $584,500—a difference of $87,500. The appraised fair market values also did not account for the outstanding tax debt, which would reduce the value. (*See* Doc. 105-9). Thus, the amount paid at auction, when added to the unpaid taxes, resulted in the buyers paying a total amount not materially less than the appraised values of the properties. *See Eastman Credit Union v. Bennett*, No. E2015-01339-COA-R3-CV, 2016 WL 1276275, at *9-10 (Tenn. Ct. App. Mar. 31, 2016) (noting that "materially less" represents "a pretty substantial difference" and is a "very difficult burden for the debtor to overcome") (citations omitted).

Brandt failed to present sufficient evidence that the proceeds of the sales of the properties securing his debt to First National were materially less than the fair market value for the properties at the time of the sale. *See Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004) (holding that a "mere scintilla" of evidence is insufficient). The undisputed evidence shows that Brandt cannot overcome the

8

statutory presumption that the sale prices of the properties were equal to their fair market value.

## III. CONCLUSION

First National's Motion for Summary Judgment (Doc. 106) is **GRANTED**. The Clerk is directed to enter judgment in First National's favor and against Brandt for $1,227,712.95. First National may separately move for reasonable attorney's fees and costs.

**ORDERED** in Tampa, Florida, on February 24, 2020.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge